May it please the court, my name is Richard Gray and I represent the defendant and appellant Autozone, Inc. I'd like to reserve five minutes for rebuttal. Your honors, in this case the jury awarded plaintiff Randy Cosby one and a half million dollars simply for being placed on a one-month leave of absence so he could focus on diagnosing and treating his sleep apnea condition. The jury's award of damages for failure to provide reasonable accommodation is completely at odds with common sense, with reality, and most importantly, the evidence in the record. The harm caused by the leave of absence is one month's loss of pay, that's $4,917.60, according to the plaintiff's own economist, and relatively minimal emotional distress. He testified that he was a little upset when he found out he could not work from home and have somebody drive him around to his stores instead of being on this leave of absence. So the only way, the only way for Mr. Cosby to justify the $1.5 million in damages is to establish a causal link between his one-month leave of absence and his termination, which occurred about 7 or 8 months later. Now, with regard to that. Well, Mr. Gray, the fact that he didn't receive a reasonable accommodation and that the employer did not engage in the interactive process which State law requires, couldn't a jury have found that that affected his work in such a way that it resulted in him being ineffective and causing him to be fired? Although the jury also found that his layoff or firing was justified. Isn't there a causal connection between, let's put it flamboyantly, the angst that he felt at not getting a reasonable accommodation and not having an interactive process? Couldn't a jury have found that that changed, in the words of Judge Carlton, that he was never the same man and that's why he had to be laid off? No, Your Honor. I don't think any reasonable juror could make that inference or could make that. But that's the argument the reasonable judge made. I mean the judge made. That's correct. And, of course, Judge Carlton did not cite any evidence for that in the record. But he also admitted that that argument had not been made by the plaintiff. Right. Right. But can't we consider that argument in determining whether Judge Carlton abused his discretion in not modifying the verdict? I think we can. I think that the issue that I'm focusing on is really the jury's verdict and whether or not there's substantial evidence to support that verdict. And California courts have, and the jury was instructed here, that a legal cause of injury is a cause which is a substantial factor in bringing about that injury. And California courts have interpreted that term, substantial factor, as subsuming the but-for cause of a test of termination. In other words, was Autozone's failure to accommodate a but-for cause of Mr. Cosby's termination? Now, it's critical to keep in mind the factual context here of the failure to accommodate claim. In January of 2006, Mr. Cosby was placed on a leave of absence from his position as a district manager. He had about ten stores spread out throughout northern California. Because he was restricted from driving, he told his supervisor, Mr. Kobaki, I'm going to be restricted from driving for the next 30 days. So he was placed on leave of absence. During the leave of absence, his sleep apnea was diagnosed. He was prescribed one of these masks, and it was effectively treated. So he returns to work. He was gone for less than a month, January 23rd to February 20th, 2006. He returned to work without any further restrictions. I would submit that at that point, the whole reasonable accommodation issue was over and done with. Now, in his answering brief, Mr. Cosby at pages 26 and 27 sets forth his purported evidence of causation in an effort to establish this causal link. He tacitly admits that the only way he can justify the $1.5 million is to establish that causal link. He makes essentially three points. The first one is that he asserts for the very first time that after returning to work, his work performance failed to a level resulting in his termination in September of 2006. In other words, in the reply brief, the plaintiff for the first time picks up on what Judge Carlton suggested. Correct. Correct. But a careful reading of Cosby's citations on page 27 of the answering brief, citations to the record for that proposition, reveals that none of those citations, not one of them, actually support that assertion. In fact, the evidence is directly, directly to the contrary. In early January 2006, the Western Division VP, Rick Smith, visited Cosby's stores. Cosby testified that his boss, regional manager Jim Kobanke, told him after that visit that his market was, quote, a total disaster. Again, this was before the leave of absence. The other thing that happened is this midyear performance review. He actually received the review on March 17 of 06. This was about a month after he got back from his leave of absence. The leave of the performance review says needs improvement. That's his overall rating. And as a result, he was placed on this performance improvement plan. But the key to this is that the six-month performance review covered the period from August 2305 to January 2306. In other words, before, before his leave of absence. At that point in that review, he was ranked last among all the district managers in what they call KPIs, key performance indicators. That's the store volume, the profit, number of customers, et cetera. And even more important, Mr. Cosby himself testified that upon the return to work, his performance never dropped off. He was able to do whatever he was supposed to do to meet AutoZone's expectations, and he was able to work even harder than before. So under those facts, I would submit that no reasonable juror could conclude that Cosby's leave of absence was the cause of his performance problems. Now, the second of the three points that is made in the answering brief is this. There was a sexual harassment investigation in January of 2006. The problem is there's no evidence whatsoever in the record that this sexual harassment investigation had anything to do with the fact that Mr. Cosby happened to be on a leave of absence. In January of 2006, a male employee complained that he had seen Mr. Cosby kissing a female store manager. That had to be investigated right away under the law, a duty of prompt to conduct a prompt investigation. So Mr. Cosby would have been interviewed about that regardless of whether he was or wasn't on a leave of absence. And then the third and final point that Mr. Cosby makes in trying to establish this causal link is this corrective action review for failure to complete a required audit. Now, a corrective action review is simply a routine form that AutoZone uses. And if you look on the form, it's at excerpts of record page 107. There's some ‑‑ it says verbal warning, first written warning, second written warning, serious violation. In this particular form, the X was next to the verbal warning. So this was simply a documentation of a verbal warning. Cosby testified that Mr. Kobaki, his supervisor, told him, just don't let it happen again. It's no big deal. Cosby testified that he was, again, only a little upset upon learning that he would be given this corrective action review. And the verbal warning served its purpose because Cosby didn't fail to complete any subsequent audits. So as Mr. Kobaki testified, it was a done deal, it meaning the whole late audit issue. Most important, though, about this corrective action review, Cosby's failure to complete the audit in January of 06 was simply not a factor in Mr. Kobaki's August 2006 termination recommendation. Counsel, I understand that this was all presented to a jury. Right. I thought the principal issues before us related to the damages, and your time is going. So could you tie this together for us? Yes, I will. And the reason I'm focusing right now on this corrective action review is because I think that's really the single causal thread that might be hanging here to tie the leave of absence to the termination. So let me just, again, it's important on the factual context. There was a March 1706 meeting between Mr. Cosby and his supervisor, Mr. Kobaki. There was an HR representative present. Cosby refused to sign three separate documents at that meeting, the corrective action review, the midyear evaluation, and the PIP, the performance improvement plan. He testified the reason he refused that was because he thought he was being discriminated against because of his disability. The jury found otherwise. And in the August 06 memo from Mr. Kobaki, summarizing the reasons for the termination, and that's excerpts of record 82 and 83, nowhere in that memo did Mr. Kobaki cite the   cause with regard to the leave of absence tied to the termination damages. Mr. Gray, would you do me a favor? Would you please tell us what you would like us to do and why? All right. I will, Your Honor. I think that under the facts I've just described, I don't think any reasonable juror would be able to conclude that there was a but-for cause with regard to the leave of absence tied to the termination damages. So AutoZone would request that this Court issue a substantial remitter with Cosby being given the option of accepting the remitter or a new trial as to both damages and liability on the two causes of action that he was successful on. Help me out. What is substantial? All right. Economic damages, $4,917.60. Non-economic damages, again, obviously more subjective, but he testified he was only a little upset. Emotional distress will not be presumed, will not be inferred. It has to be based on evidence. $5,000, $10,000, $15,000, something in that range for emotional distress. And if he doesn't accept that, a new trial on damages only? No, on damages and liability. On liability and damages, because the two are intertwined, and we cited case law to that effect in our opening brief. Why do you think that the jury cannot be instructed? We found that there's a violation of failure to give reasonable accommodation. We found that there was failure to give interactive. Those are two violations of the Labor Code. Correct. You're to find damages for that. I'm sorry? Why can't the jury just find damages for those two breaches? Why do you have to try liability all over again? Liability has been established. I understand, Your Honor. You're appealing the liability issues. That's correct, except that there is case law cited toward the end of our appellant's opening brief to the effect that when the two issues, liability and damages, are so intertwined that one cannot be determined without reference to the other, then the court should order a new trial. Now I'm really confused. If you want a remittitor and they don't accept it, then you would get a trial, a new trial, wouldn't you? That's right. Did you ask that you really want a remittitor? Well, we want to – we would request this Court to issue a remittitor with the option of either accepting the remittitor or a new trial as to both liability and damages on those two claims. Okay. What did the district court say when you asked the district court for a remittitor? Well, the Court denied our new trial motion and so didn't speak at all to the – didn't get to the remittitor issue. You didn't ask for a remittitor? No, we did. The Court denied it. Did you suggest a sum to the district court? I don't recall. I think implicitly we did. I mean, I think it was in the briefing as far as the 4,000. Let me be as clear as I can in asking this question. If we grant a remittitor and order a new trial both on liability and damages, you're perfectly aware that they may find that you're liable for firing him. Well, I would say not if the retrial is limited to the two causes of action, the failure to accommodate. So you would like the new trial to be on damages and liability, but only on the liability that you've been found liable for, not on the ones you haven't been found liable for. Correct. I can see why you want that. All right. Thank you. Thank you. Good morning, Your Honors. May it please the Court. Attorney Lawrence Fohm appearing on behalf of Randy Cosby. Thank you, counsel. Your Honors, responding more to the reply, because most everything we had to cite and say is in our answering brief, but in terms of the theme, what we see here is a request for a do-over, a do-over because they don't like one result. On the one hand, this learned judge. Did you try the case? What's that? Yes, I did, Your Honor. You argued that economic damages, based on your expert testimony, should be $4,917.60. Undeniably so. I did make that argument. $474,000. That is all true. I did not argue. Were you quite surprised at that? I was very surprised at the outcome, and then I was educated as to why this is called the practice of law. And frequently we argue. Why should the economic damages be $174,000? Try to break that down to me. Yes. Based on the evidence, right? Yes. Let me explain and answer Justice's question. First of all, the only way to get $174,000 in economic loss is to link the economic loss to termination. I would never have the gusto to suggest otherwise to this Court. But I do want to separate that issue out for a moment, because that's the only part of the jury's verdict which, without any doubt, requires a link to the termination, and I will explain why I say that. The $1.3 million in emotional distress does not require a link to the termination. Let's talk about your concession that the only way to justify $174,000 is to link the economic damages to the termination. Yes, sir. Did I read the record right, that the termination was found to be justified, and therefore there was no basis for any damages because of the termination? Well, the record is that the jury did not find retaliation or discrimination, but they did not find that on claims 3, 4, and 5, they found for the defendant. Those are the claims involving termination. Well, no. The claim for failure to accommodate certainly was not limited in terms of what harms could be caused. I argued it a certain way, Your Honor, because I was hoping, of course, as an advocate to, and again, as it's been pointed out time and again in the briefing in this case, the arguments of counsel are not evidence. They're simply arguments. And I tried to shape this case based on what I thought I saw as the attorney trying to do the trial, when apparently you're arguing now that the evidence which shows a lack of accommodation to allow him to have someone drive to his ten stores was a substantial factor in his loss of the job. Absolutely. In fact, I want to start out with what was just mentioned by opposing counsel, which is the idea that a violation of an important statutory law, both the provision of an accommodation and the required interaction, is somehow now a simple matter that causes very little damage. That is obviously refuted by the jury and the learned judge who sat and watched the proceedings. This failure to accommodate did rack up Mr. Cosby. It did affect his performance. Now, it's true that with a heaping dose of irony here, the defendant's own evidence claiming that Mr. Cosby's performance fell off and was poor and justified his termination is now the exact evidence, I must argue, in support of the verdict. And again, with irony, they don't wish to now consider their own evidence that they offer to the jury, and they would like to rely on Mr. Cosby. So based on the result of the jury, it seems as though the sides have switched as far as what evidence matters. And this is why a heavy theme in our answering brief was we have rules of appellate jurisprudence which require the parties, both of them, to look at the record and interpret the record and find those facts which support the judgment. And that's what we have done. And quite frankly, as I went back through the record and looked at the information, it becomes rather apparent how the jury can come to this conclusion that the failure to accommodate racked up Mr. Cosby. And so let me address that just very briefly and note for the Court that although Judge Carlton had one way he saw the termination being caused by a failure to accommodate, meaning that Mr. Cosby had been demoralized, that's not the only way by which a jury could have concluded that the failure to accommodate caused the termination. You didn't argue that at trial. Well, I presented the evidence at trial, Your Honor. Would you answer my question? I did not make the argument in closing. I made the argument in opening, however, that the failure to accommodate was a but-for cause of Mr. Cosby's termination. Okay. Absolutely, I did. But I agree with counsel that the arguments are not necessarily evidence. But what we do have is evidence. Specifically, and it's a fast, fast little part of the testimony, but I find it poignant when on page 117 of the record, when I was questioning Mr. Kolbaki about what changed with Mr. Cosby. When did his demeanor change? It was noted that after the fiscal year 05, something changed, correct? Mr. Gray, objection, vague, ambiguous. The Court, something changed about his attitude? By Mr. Boehm. Something changed about Mr. Cosby's attitude, correct? Answer. I would say so, yes. What changed? He lacked the enthusiasm to drive the business. Why? Did you ever find out what happened? Calls for speculation. The Court, you may answer the question, sir. I think that he lost the desire to drive the business. Unlawful actions in the workplace have real consequences, and this case is a very powerful, very powerful reminder of that for all litigants, both plaintiffs and defendants. But you would disagree with Mr. Gray that the only proximate result of the failure to accommodate reasonably was a 20-day layoff. I disagree with that on so many grounds. First of all, there's been this temporal line that's been drawn in the sand to say that this failure to accommodate happened in January and ended in January. That's not supported by the record at all. In fact, one of a key piece of evidence that was ---- When did the 20-day period take place? The 30-day period did take place in January, but before that, and this is even in the case of the defendant, starts out by going through the process that Mr. Cosby was faced. 2005, one year before he fell asleep at the wheel, he was told he needed a sleep study. But he didn't want to get it because there was not an environment of interactive process, and that's something that the jury could have considered as well. And then also, this idea of being demoralized and humiliated and not into your job anymore because of the failure to accommodate is only one threat. Counsel just noted another threat by which causation of these damages could be viewed, and that is looking at the decision paperwork. Mr. Cobakee is not the final decision maker in this case. Mr. Smith was. Mr. Cobakee put out an all-points bulletin asking for information to support the termination of Mr. Cosby. One of the things that Mr. Cobakee received was information from loss prevention indicating that Mr. Cosby did not do the audit he was supposed to have done when he was on his leave of absence. Other information related to the corrective action review. I also want to address the point just raised by counsel that says the evidence in this case does not suggest a sharp downturn in Mr. Cosby's performance. That contention is belied numerous times in the recommendation emailed to Carlos John, which is Defendants Exhibit DD, ER 80 and 81, where it says specifically in Item No. 8 of the defiance, which begins right upon Mr. Cosby's return when he's noted to be angry and belligerent and combative after having been put off work in the past, and embarrassed by an ill and misguided sexual harassment claim, which, by the way, he started. He was the male who complained that people were spreading rumors about him. And because he was not in the workplace, he had no opportunity to control the rumor mill or to give feedback to that investigation. And that upset him. That's why I say the $1.3 million, that would stand even if it wasn't connected to the termination, because when you investigate a pastor and suggest that he is philandering and having sex with a subordinate, that is extremely damaging to a reputation, especially of a religious man. But going to this idea that his performance didn't decline, it says it right here in Mr. Kolbaki's memo on ER 81 of the record. The trend is getting worse. This is the words of Mr. Kolbaki on August 11, 2006. For them to say that the trend was not getting worse is contradicted by the evidence in this case. And this happens repeatedly throughout their recitation of the evidence. They do not cite all the evidence that supports this verdict. They haven't viewed the evidence with inferences drawn in favor of Mr. Cosby. In fact, just last night I went through it again just to see if there was a single inference, just one, that they drew for Mr. Cosby. Not a one. Here they are alleging that Mr. Cosby's performance never declined, says the record, while at the same time their whole case against retaliation was that his performance declined, that the trend was getting worse. And the numerous write-ups and information that they received, all cites post leave of absence conduct. And before the leave of absence, as it's indicated in the complaint, which is again in evidence, the complaint says that Mr. Cosby was upset and afraid, fearful to request accommodation because of the hostility of the environment and the failure to accommodate. There is this case stands for very dangerous proposition that a failure to accommodate isn't a big deal and doesn't cause a lot of harm. The jury. Well, okay. But just help me. We see a lot of cases that come through. And these damages for emotional distress are very high. I mean, they're quite, they're sort of eyebrow raising. Would you, just explaining why this case is so extraordinary. Is it because your client is a pastor? Is that the problem? I believe that that's part of it. I believe, how do you reconcile the emotional harm when you've spread it out? There's a proverb where I grew up about a learned rabbi who's asked what to do by a person who has spread some words about the rabbi. And the rabbi says, well, go ahead and gather up, take a book and send the pages all out. Let them off the bridge. And so the man does and he comes back to the rabbi and says, rabbi, I've done as you've asked. And now the rabbi says, you'd like to make it up to me? Go get all those papers back. It's impossible. And the defamation that happened and the humiliation which happened to Mr. Cosby while he was on his leave can never be brought back. And I would note that it is causally linked. Are you claiming that the failure to accommodate and the failure to engage in interactive activity caused a rumor that he kissed a woman to start? What it caused is an inability for Mr. Cosby, who was excluded from the workplace, to get that complaint on track. He was the complainer. He said, people are making up stories about me having sex in the workplace. Please look into this. And when you review the record, you'll see that that's completely supported. That was the complaint. And he ended up being the subject of that investigation while on leave and was not permitted to participate or redirect the investigation, which he requested. Well, if it was true that people were saying these things, you think that they should have just assumed that they were not true and gone and talked to the people who were saying them? Is that it? Yeah, that's what was supposed to have happened. That's what Mr. Cosby asked to have happen, and it never happened. Now, real quick, because I understand that if Mr. Cosby had been at work, the investigation would not have taken place? If Mr. Cosby were at work, the investigation would have taken place the way it should have, by speaking to him and realizing he was the one who made the complaint and then finding the co-workers who were making up the lie. That was the issue. That's why we're talking about it, because the investigation would have taken place anyway. They would have asked people, what do you know about this, right? No, no, no. The investigation would not have been as... It stopped and started with Cosby. It would have been about the people defaming Cosby instead of about Mr. Cosby doing sexual harassment. But that's a fallback argument. I want to just real quick address the Court's concern about the amount of damages. The plaintiff's primary contention is that there is ample evidence to support the causal link. The termination has a lot of evidence in terms of the harm for his financial losses, taking care of his parents, all of that. And I will also note, last point, is that the defendant doesn't actually address whether the termination itself was enough.  Thank you, Your Honor. If there are no further comments, we'll start. Your Honor, I think I may have about one minute left on my time. But I guess the key point I'd like to make is regard to this pastor argument and the sexual harassment complaint. On page 7 of our answering brief, we stated and cited to the record, in January 2006, a male store manager, not Mr. Cosby, a male store manager complained that he had seen Cosby kissing a female store manager during a recent inventory. That's what triggered the sexual harassment complaint. Yes, when Mr. Cosby, home on a leave of absence, heard these rumors, he did call the HR person and say, what's going on? But the point is the sexual harassment investigation was triggered independently of the fact of whether or not Mr. Cosby was on the leave of absence. And I would submit it on that. Thank you. Thank you. The case just argued is submitted for decision. That concludes the Court's calendar for this morning, and the Court stands adjourned.
judges: Schroeder, Ripple, Bea